IN the MATTER OF the MARRIAGE OF: Jane A. SELLERS, Petitioner-Respondent,

v.

Kelly D. SELLERS, Respondent-Appellant.†

Court of Appeals

*No. 95–2730. Submitted on briefs February 27, 1996.—Decided April 9, 1996.*

(Also reported in 549 N.W.2d 481.)

†Petition to review denied.

579

580

For the respondent-appellant the cause was submitted on the briefs of *Daniel Snyder*, Park Falls.

For the petitioner-respondent the cause was submitted on the brief of *Kevin G. Klein* of *Willett & Klein, S.C.*, Phillips.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Kelly D. Sellers appeals a judgment of divorce. Kelly raises the following issues: (1) whether the trial court erred when it used Kelly's earning capacity instead of his actual earnings in determining maintenance and child support obligations; (2) whether there is sufficient evidence to support the trial court's finding of Kelly's earning capacity; (3) whether the trial court erroneously exercised its discretion when it refused to award him maintenance; (4) whether the trial court erroneously exercised its discretion when it fixed Jane A. Seller's child support obligation at $150 per month; and (5) whether the trial court erroneously exercised its discretion when it divided the marital estate unequally.

We conclude: (1) The trial court did not err when it considered Kelly's earning capacity instead of his actual earnings; (2) sufficient evidence supports the trial court's finding of Kelly's earning capacity; and (3) the trial court did not erroneously exercise its discretion by refusing to award maintenance, by fixing Jane's child support obligation at $150 per month or by dividing the marital estate unequally. Therefore, the judgment is affirmed.

At the time of divorce, Kelly was thirty-eight years old, Jane was thirty-five and they had been married for approximately fourteen years. Two children, ages nine and ten at the time of the trial, were born as a result of

the marriage. The parties stipulated to joint custody of the two children and a fifty-fifty division of physical placement.

Jane was actively engaged in professional nursing throughout the marriage and is a licensed nursing home administrator in Wisconsin. She pursued various degrees in her field from a number of institutions throughout the country and is currently a home health nurse employed by a home health care agency she owns. Jane's income from various sources totaled $71,000 in 1990, $226,000 in 1991, $182,000 in 1992, and $63,000 in 1993. While her 1994 income tax returns had not been prepared at the time of the divorce hearing, Jane estimated her income for 1994 to be $44,000. Jane testified that the greater income from past years came from one-time business successes and that her earnings were dropping because of a business downturn. The trial court determined that Jane's earnings for the purpose of the divorce judgment would be $50,000 per year.

During the marriage, Kelly worked as a laborer at a local paper mill, worked as a maintenance worker and as a social worker aide at a nursing home operated by Jane's family, and for the last seven years has acted as a supervisor at a religious-based school known as the Christian Academy. Kelly works at the Christian Academy for nine months of the year and is not employed during the summer months. Kelly's post high school education consists of two semesters of Spanish at a community college and one semester of Scriptures at a bible college. Kelly's income from 1990-94 from the Christian Academy and other sources ranged from $13,000-17,000 per year. Jane testified that at the beginning of the marriage, Kelly was earning between $25,000-30,000 per year and that their earnings

remained comparable until he started working at the Christian Academy in 1988. Jane also testified that she thought Kelly could obtain a job as a welder for $15-20 per hour. In view of the testimony and the circumstances surrounding Kelly's career change, the trial court found Kelly's earning capacity to be between $30,000-40,000 per year.

Jane brought approximately $60,000 into the marriage and their home was built on a parcel of land gifted to them by Jane's mother. Further, the trial court found that Jane provided the majority of the homemaking and child care services during the marriage. After hearing the testimony of the parties at the trial, the court declined to award Kelly maintenance; fixed Jane's child support obligation at $150 per month; and divided the marital estate seventy-five percent to Jane and twenty-five percent to Kelly. Kelly appeals.

## STANDARD OF REVIEW

The award of maintenance and the division of the marital estate are addressed to the sound discretion of the trial court. *Bahr v. Bahr*, 107 Wis. 2d 72, 77, 318 N.W.2d 391, 395 (1982). Child support awards are also relegated to the trial court's sound discretion. *Schwantes v. Schwantes*, 121 Wis. 2d 607, 630-31, 360 N.W.2d 69, 80 (Ct. App. 1984). As long as the trial court reaches a rational, reasoned decision based on the application of the correct legal standards to the record facts, the trial court's exercise of discretion will be affirmed on appeal. *Smith v. Smith*, 177 Wis. 2d 128, 133, 501 N.W.2d 850, 852 (Ct. App. 1993).

Further, the trial court made several factual determinations upon which its exercise of discretion was based. The trial court's findings of fact are reviewed under a clearly erroneous standard. Section 805.17(2), STATS. Under this standard, even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the finding. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). To command reversal, the evidence supporting a contrary finding must constitute the great weight and clear preponderance of the evidence. *Id.*

## EARNING CAPACITY

Kelly first contends that the trial court erred when it used his earning capacity rather than his actual earnings in determining maintenance and child support obligations. First, we recognize that a spouse to some extent has the right to choose a career path that may realize less annual income than other career paths that may be available. *See Balaam v. Balaam*, 52 Wis. 2d 20, 26-27, 187 N.W.2d 867, 871 (1971). However, there must be some limit to the degree of underemployment one may elect to choose when the former spouse is being presented the bill for the financial consequences of the choice. Here, Kelly's employment with the Christian Academy paid an annual salary of approximately $13,000. This is well below the amount the court found to be Kelly's earning capacity. Kelly's choice of underemployment is similar to the situation in *Forester v. Forester*, 174 Wis. 2d 78, 496 N.W.2d 771 (Ct. App. 1993), where before their

divorce the wife elected to become a charter boat captain with negligible earnings rather than continue her employment as a surgical technician. We held that the trial court misused its discretion when it failed to consider the wife's earning capacity as a surgical technician in determining the husband's maintenance obligation. *Id.* at 88, 496 N.W.2d at 775.

The trial court may consider earning capacity when determining a support or maintenance obligation if it finds a spouse's job choice voluntary and unreasonable. *Smith*, 177 Wis. 2d at 138, 501 N.W.2d at 854; *Van Offeren v. Van Offeren*, 173 Wis. 2d 482, 496, 496 N.W.2d 660, 665 (Ct. App. 1992). While the courts have stated that shirking is required to consider earning capacity, shirking does not require a finding that the spouse deliberately reduced his earnings to avoid support obligations or to gain advantage in the divorce action. *Smith*, 177 Wis. 2d at 136-37, 501 N.W.2d at 854; *Van Offeren*, 173 Wis. 2d at 496, 496 N.W.2d at 665. It is sufficient that the court finds the employment decision both voluntary and unreasonable under the circumstances. *Van Offeren,* 173 Wis. 2d at 496, 496 N.W.2d at 665. The employment decision may be unreasonable even though it is well intended. *Id.*

The issue whether Kelly's job choice is unreasonable presents a question of law. *Id.* at 492, 496 N.W.2d at 663. However, we will give appropriate deference to the trial court's legal conclusion because it is so intertwined with factual findings supporting that conclusion. *Id.* at 492-93, 496 N.W.2d at 663-64.

We conclude the trial court's determination that Kelly's continued employment with the Christian

587

Academy for approximately $13,000 per year is unreasonable must be sustained on appeal. While Kelly has engaged in such employment for over seven years, he was able to do so only because Jane was earning income sufficient to support the entire family unit. Because Kelly was not required to maximize his earning capacity, he enjoyed the luxury of pursuing private interests without regard to compensation. That situation no longer exists. Moreover, Kelly has skills that produced substantially higher earnings in the past when his earnings were necessary to provide an appropriate standard of living for the family. Finally, pursuit of employment with the Christian Academy does not reflect employment for which Kelly trained or otherwise prepared for as his life's work. It represents a diversion neither of them anticipated at the time of the marriage.

Although some deference must be given to the express desires of a spouse in regard to preferred employment, we agree with the trial court that Kelly's continued employment with the Christian Academy is unreasonable under the circumstances. Accordingly, we conclude that the trial court did not erroneously exercise its discretion when it considered Kelly's earning capacity in determining maintenance and child support obligations.[1]

Next, Kelly contends that the trial court's finding that his earning capacity is between $30,000-40,000

---

[1] We note that this decision does not stand for the proposition that Kelly cannot continue to work at the Christian Academy. Kelly may continue to work at the Christian Academy, but Jane should not be required to pay for Kelly's voluntary and unreasonable underemployment.

per year is clearly erroneous because there is insufficient evidence to support the finding. We disagree. Jane testified that at the beginning of the marriage, her's and Kelly's incomes were comparable with each earning $25,000-30,000 per year. She further testified that their incomes remained comparable until Kelly started working at the Christian Academy in 1988. In contrast, Kelly testified that he did not recall what he was earning while he worked at the paper mill or the nursing home. We conclude that from the testimony the trial court could properly determine Kelly was making $25,000-30,000 per year at the beginning of the marriage, his income remained comparable to Jane's until he started working at the Christian Academy and his earning capacity at the time of the divorce was $30,000-40,000 per year. Because Kelly has job skills and a history of earnings that support the trial court's determination that his earning capacity is between $30,000-40,000 per year, the finding is not clearly erroneous.

## MAINTENANCE

Kelly next argues that the trial court erroneously exercised its discretion when it refused to award him maintenance. He rests this claim on the disparate earnings between himself and Jane. While Jane did enjoy substantial earnings for a period of time, the court found that her current earnings for the purpose of the judgment of divorce were $50,000 per year. Jane testified that her income for 1994 was $44,000, that the greater incomes from past years came from one-time business successes and that her income was declining. In arriving at the earnings of $50,000, the trial court noted the declining pattern of Jane's income from work and considered that Jane did not provide a 1994 tax

return or W-2 statement. Despite the substantially higher earnings enjoyed in the past, the evidence is sufficient to support the trial court's determination of Jane's present and future earnings. Based upon Kelly's earning capacity of $30,000-40,000 per year and Jane's projected earnings of $50,000 per year, the trial court determined that to award maintenance under the circumstances would be neither fair nor equitable.

Because the trial court did not err when it considered Kelly's earning capacity rather than his actual earnings, we conclude the trial court in its sound exercise of discretion could decline to award maintenance. The parties' earning capacities are comparable, both parties are in good health and Jane is required to make child support payments and provide health insurance for the two minor children. While Jane continued to engage in educational programs during the marriage, her professional degree and her successful business operation were made without any substantial sacrifice or detriment required of Kelly. While many courts may determine some limited term maintenance would be appropriate under the circumstances of this case, we cannot say that to decline maintenance is an erroneous exercise of discretion.

### CHILD SUPPORT

Kelly next contends that the trial court erroneously exercised its discretion by ordering Jane to pay $150 per month child support for the two children. Kelly does not contend that it was an erroneous exercise of discretion for the trial court to deviate from the child support guidelines. He contends that the award of only $150 per month when the guidelines

suggest a much higher figure was an erroneous exercise of discretion. Kelly's argument is based primarily on a comparison of his earnings of $14,000-17,000 per year with Jane's substantially higher past earnings.

The trial court concluded that based upon Kelly's earning capacity and Jane's earnings, there was not a great disparity in the parties' potential incomes. The trial court also considered that Jane will have placement of the children fifty percent of the time, which will involve a substantial cost in direct child care expenses that she will have to incur. In addition, Jane is required to furnish health insurance for the children. Because the court did not err when it considered Kelly's earning capacity in determining Jane's child support obligation, we conclude the trial court did not erroneously exercise its discretion by setting child support payments at $150 per month, considering that Jane is required to provide health insurance for the children and will have the children fifty percent of the time. Should future developments indicate higher child support payments are appropriate, the court has continuing jurisdiction and may adjust Jane's child support obligation as such developments may require. *See* § 767.32, STATS.

## PROPERTY DIVISION

Kelly next contends that the trial court erroneously exercised its discretion when it divided the marital estate seventy-five percent to Jane and twenty-five percent to Kelly.[2] Section 767.255(3), STATS., sets

---

[2] By using the word "marital estate," we mean property subject to division under § 767.255, STATS.

forth the presumption that the divorcing parties' marital estate is to be divided equally. However, § 767.255(3) also provides that the court may alter the distribution after considering various factors.[3] The trial court discussed many of the factors in its decision including the length of the marriage, the earning capacity of the parties, its finding that Jane brought $60,000 to the marriage, and its finding that Jane provided the greater economic contributions while also providing the majority of the homemaking and child care services during the marriage. These were appropriate factors to consider under § 767.255(3) and support a disproportionate division of the marital estate.

Based upon the substantial property Jane brought to the marriage and the fact that she provided the majority of the economic and noneconomic contributions to the marriage, the trial court could

---

[3] Section 767.255(3), STATS., provides in relevant part:

The court shall presume that all property not described in sub.(2) (a) is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering all of the following:

 (a) The length of the marriage.

 (b) The property brought to the marriage by each party.

 (c) Whether one of the parties has substantial assets not subject to division by the court.

 (d) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

 . . . .

 (f) The contribution by one party to the education, training or increased earning power of the other.

 (g) The earning capacity of each party . . . .

 . . . .

 (m) Such other factors as the court may in each individual case determine to be relevant.

properly conclude that a division of seventy-five/twenty-five was fair and equitable under the circumstances of this case. There is no strict mathematical formula in dividing the marital estate and the division is within the parameters of reasonableness considering the statutory factors. *See Wilberscheid v. Wilberscheid*, 77 Wis. 2d 40, 45, 252 N.W.2d 76, 79 (1977). Therefore, we conclude that the trial court did not erroneously exercise its discretion in dividing this marital estate.

Kelly, however, argues that the trial court's finding that Jane made a greater contribution to the child care and homemaking responsibilities is clearly erroneous and therefore the court erroneously exercised its discretion in dividing the marital estate. Kelly argues that the finding is inconsistent with Jane's testimony that after the divorce with equal placement, she had to cut back her work hours so she could devote more hours to child care. The trial court, however, could properly conclude that the reason she cut back her work hours was because of the placement schedule during the summer, which provides for the parents alternating two weeks of placement at a time. Further, Jane testified that she did the majority of the child care and homemaking services during the marriage. Kelly testified that the homemaking and child care services were shared equally. The weight of the evidence and the credibility of witnesses are matters entirely within the province of the trier of fact. *Lac La Belle Golf Club v. Village of Lac La Belle*, 187 Wis. 2d 274, 289, 522 N.W.2d 277, 283 (Ct. App. 1994). Accordingly, we conclude the trial court's finding that Jane made the greater contribution to the child care

and homemaking responsibilities is not clearly erroneous.

Kelly also contends the trial court erroneously exercised its discretion because the court discussed as a factor in the property division the fact that Kelly was not economically disadvantaged in any respect as a result of the marriage. Kelly suggests the trial court erred because this is not one of the specific factors enumerated in § 767.255(3), STATS. Section 767.255(3)(m) provides that the court may consider, in addition to the factors specifically enumerated, "[s]uch other factors as the court may in each individual case determine to be relevant." The trial court deemed this factor to be relevant in addition to the specific factors it considered. We conclude that the trial court did not erroneously exercise its discretion by considering the fact that Kelly had not been economically disadvantaged as a result of the marriage because the court could consider any factor it determined relevant and it did not rely solely on that factor in making the property division.

While we have reviewed the trial court's determination under a discretionary standard and concluded that a reasonable person could reach the conclusion reached by the trial court in this case, there is concern that these results may have been different if the gender of the parties had been reversed. This concern is troubling because it is of paramount importance that each individual standing before the bar of justice is treated fairly, with respect and in a manner consistent with all others in similar circumstances. While concerned, we ultimately must trust the sound judgment of the trial court because the outcome in divorce cases is intensively fact specific for

each case. While guidelines, rules and structure within which discretion should be exercised can be applied by appellate courts on review, the great burden of reaching a just and fair judgment rests on the trial judge.

The conscientious acceptance of this onerous responsibility by our trial bench is the greatest protection we have that justice will be done in each case. It is with that firm conviction that we have repeatedly concluded that questions such as those presented here must be entrusted to the sound discretion of the trial court. The exercise of discretion leaves great areas where reasonable people may differ. But as long as the court reaches a conclusion that is within the parameters of reasonableness, it is inappropriate to interfere with the trial court's exercise of discretion. While the results in this case may not have been the results that any member of this panel would have reached, we are persuaded that they remain within the parameters of reasonableness and represent a proper exercise of judicial discretion. The parties can demand no more than that.

*By the Court.*—Judgment affirmed.

CANE, P.J. (*dissenting*). I dissent from that portion of the majority's opinion affirming the trial court's unequal division of the marital estate. Here, the trial court awarded Mr. Sellers $84,402 (twenty-five percent) and Mrs. Sellers $253,208 (seventy-five percent) of the net marital estate accumulated during the marriage. Mrs. Sellers brought $60,000 to the fourteen-year marriage and earned substantially more income than Mr. Sellers after he elected to work as a supervisor at the Christian Academy some seven years

before the divorce. The trial court reasoned that because Mrs. Sellers contributed a greater share of the income to the marital estate, brought $60,000 to the marriage and performed a greater share of the child care, a departure from the equal division of the estate was justified. Given these facts, was it reasonable for the trial court to depart from the presumed fifty/fifty property division? Yes. However, do the facts justify such a gross disproportionate division of the estate? No.

The trial court unreasonably concluded Mr. Sellers' choice of a lower paying career justified departure from the presumed equal division of the estate accumulated during the marriage. Both Mr. and Mrs. Sellers made their career choices and contributed to the child care. This is not a case where a spouse shirked marital obligations or dissipated some of the marital assets, actions which justify denial of an equal share of the marital estate. Rather, it is simply a situation where one spouse had an opportunity to earn a substantially greater income and make a greater economic contribution to the couple's estate while allowing the other spouse an opportunity to elect a desired career choice. In this case, it is of significance that Mr. Sellers' decision to take a lower paying job occurred long before the couple was divorced. This reflects a family decision, made seven years before the divorce, to allow one spouse to pursue a new career. This court has not penalized the beneficiaries of such decisions in the past and should not do so in this case.

Such choices are not new to this court. In *LaRocque v. LaRocque*, 139 Wis. 2d 23, 406 N.W.2d 736 (1987), our supreme court held that although the wife elected to pursue a less lucrative career than she was trained for, she was nonetheless entitled to

maintenance, as well as the equal property division award that was not appealed. Although *LaRocque* focused on maintenance, the underlying principle is the same: Except for cases involving unusual circumstances, both parties should expect to share equally the increased earnings or, as in this case, the accumulated property. Indeed, we have affirmed cases that followed the principles of *LaRocque*.

What is most disturbing about the majority's result is that it approves a property division that perpetuates a double standard. When a wife makes a choice to make less income and pursue interests either inside or outside the home, she is not penalized because she earns less than she could possibly earn. There is no doubt that many of our best teachers, social workers, clergy members and community volunteers could make more money working in factories or other higher-wage careers. Yet, we place a value on allowing people to make choices and to consider non-financial rewards: job satisfaction, personal development, benefit to the community and others. This case, however, puts men who elect to pursue lesser paying jobs in a difficult position: it suggests that where a man, the traditional breadwinner, elects to pursue a less lucrative career for non-financial reasons, he can be unfairly penalized if he gets divorced.

Even the majority expresses a concern that the trial court's result may have been different if the gender of the parties had been reversed. I not only express the same concern, but contend that had the genders been reversed, we would not even hesitate to reverse the property division as an erroneous exercise of discretion.

It is difficult to accept the majority's logic in this case when one considers how this court would react if

the facts were slightly different. For example, if a wife was disabled during the marriage and was therefore unable to contribute economically to the marriage or to care for the children, the wife's bottom line contribution to the marriage would be the same as Mr. Sellers': she would have contributed less income and time to the family than her husband. Yet, it is hard to imagine we would permit a trial court to award seventy-five percent of the marital estate to the husband simply because he contributed more earnings and child care to the marriage. What underlies the difference in this case is the presumption that there is something inherently wrong with a spouse electing to pursue a less lucrative career. For the reasons discussed above, this policy is not only dangerous, it is not applied equally to men and women.

It is also hard to believe that the same divorce statute that forbids trial courts from considering marital misconduct when considering whether to alter the equal property division, *see* § 767.255(3), STATS., would condone a seventy-five/twenty-five percent property division that severely penalizes a husband who, seven years before the divorce, elects to take a less lucrative job by pursuing a career at a Christian school.

In addition to considering Mr. Sellers' pursuit of a less lucrative career, the trial court considered the parties' participation in child care. The parties disagreed about how much time each parent spent with the children. Although the trial court found that Mrs. Sellers provided a greater share of the child care and therefore considered it as an additional factor for departing from an equal property division, the fact that the court ordered equal child placement reflects Mr. Sellers' past contribution to the child care. Therefore, I believe it was improper for the trial court, or the

majority in this opinion, to emphasize this factor for such a substantial departure from an equal property division. Additionally, although Mrs. Sellers contributed $60,000 from money brought into the marriage for construction of their home, this fact does not justify awarding her approximately $175,000 more of the marital property.

I would conclude that awarding Mrs. Sellers seventy-five percent of the marital property under these facts was an erroneous exercise of discretion and would remand the matter for reconsideration of property division.