BRASH, J.[1]
¶1 S.M.T. appeals the trial court's orders terminating her parental rights of S.A.D.T., S.L., and S.L. S.M.T. argues that there was insufficient evidence to support the trial court's ruling that the State had proven the two grounds set forth in its petition: that the children were in continuing need of protective services and there was a substantial likelihood that S.M.T. would not meet the court-ordered conditions for their return within nine months of the hearing on the petition; and that S.M.T. had failed to assume parental responsibility for her children. We affirm.
BACKGROUND
¶2 S.M.T. is the biological mother of S.A.D.T., born July 31, 2013; S.L., born December 4, 2014; and S.L., born November 12, 2015. M.D.L. is the father of all three children; he and S.M.T. were never married, but his paternity was proven through DNA testing.
¶3 In October 2013, when S.A.D.T. was just two months old, she was removed from S.M.T.'s custody after a two-year-old sibling, S.R., was found dead after co-sleeping with S.M.T. It appeared to police officers who responded to the call regarding S.R. that S.M.T. was intoxicated. It was later discovered that S.R.'s death was due to a fatal level of morphine in his system.
¶4 S.A.D.T. was returned to S.M.T.'s care in June 2015. During follow-up visits after that reunification, the Division of Milwaukee Child Welfare (DMCPS) discovered that S.M.T. had given birth to two more children, S.L. and S.L., without disclosing those pregnancies to DMCPS. When the youngest child was born, she tested positive for THC in her system.
¶5 In April 2016, S.M.T. was arrested for operating a vehicle while intoxicated (OWI) with her children in the vehicle, after being involved in a car accident. S.M.T. was incarcerated as a result of her arrest. DMCPS took custody of all three children and placed them in foster care.
¶6 Child in Need of Protection and Services (CHIPS) petitions were filed with regard to S.L. and S.L. in May 2016, with dispositional orders issued in November 2016; a CHIPS order for S.A.D.T. stemming from her initial removal from S.M.T.'s custody in October 2013 was still in effect at that time. All of the orders required S.M.T. to gain control of her drug and alcohol problems and mental health issues. The orders for S.L. and S.L. also prohibited any domestic violence incidents between S.M.T. and M.D.L., and required S.M.T. to resolve her criminal cases and commit no further crimes. She was also required to demonstrate that she could properly supervise the children and keep a clean, safe home. Regular contact with the children, even while S.M.T. was incarcerated on the OWI charges, was required as well.
¶7 S.M.T. failed to meet these conditions. She failed to participate in alcohol and drug assessment services and tested positive for THC in April 2017. She did not follow through with any parenting skills services, even though the children displayed "aggressive behaviors" of concern to professionals involved in their care. She did not participate in any domestic violence services even though her relationship with M.D.L. was deemed to be "volatile." Home visits with the children were discontinued in February 2017 due to the home being infested with cockroaches. She also missed several scheduled visits with the children.
¶8 As a result, a petition for the Termination of Parental Rights (TPR) of S.M.T. with regard to S.A.D.T., S.L. and S.L. was filed on July 18, 2017. In the petition, the State alleged two grounds for termination: (1) continuing need of protection or services, pursuant to WIS. STAT. § 48.415(2) ; and (2) failure to assume parental responsibility, pursuant to § 48.415(6).
¶9 S.M.T. contested the petition and requested a jury trial. However, on the morning of the scheduled trial, she instead requested a trial to the court. After a three-day court trial in April 2018, the trial court found that the State had proven both grounds for termination set forth in the TPR petition. At the subsequent disposition hearing held in May and June of 2018, the court found that the termination of the parental rights of S.M.T. was in the best interests of all three children.[2] This appeal follows.
DISCUSSION
¶10 On appeal, S.M.T. argues that there is insufficient evidence to support the trial court's ruling that the State had proven the two grounds for termination- WIS. STAT. § 48.415(2) and (6) -set forth in the TPR. We review the trial court's findings of fact under the clearly erroneous standard; factual findings "will be affirmed on appeal as long as the evidence would permit a reasonable person to make the finding." Sellers v. Sellers , 201 Wis. 2d 578, 586, 549 N.W.2d 481 (Ct. App. 1996). The application of § 48.415 to a set of facts, however, is a question of law that we review independently. Tammy W-G v. Jacob T. , 2011 WI 30, ¶16, 333 Wis. 2d 273, 797 N.W.2d 854.
¶11 To prove the first ground-that the children were in continuing need of protective services, pursuant to WIS. STAT. § 48.415(2) -the State had to establish (1) that the children were the subject of a CHIPS order that contained the requisite warnings relating to TPR proceedings, and were placed outside of the parent's home; (2) that DMCPS, the agency responsible for the care of the children, made a reasonable effort to provide the services ordered by the court; (3) that S.M.T. failed to meet the conditions set forth in the CHIPS order for the safe return of the children by the filing date of the TPR; and (4) that there was a substantial likelihood that S.M.T. would not meet those conditions within the nine-month period following the court trial for this phase of the TPR proceedings.[3] See id.
¶12 S.M.T. argues that the last element was not proven due to the lack of reasonable efforts by her final case manager in these proceedings, Skyler Valk. Valk was assigned to S.M.T.'s case in November 2017, shortly before her court trial. At that time, S.M.T. was incarcerated after violating a temporary restraining order that prohibited contact with M.D.L.; she went to M.D.L.'s residence with a friend, and the friend and M.D.L. exchanged gunfire. This incident resulted in the revocation of S.M.T.'s probation from her OWI conviction.
¶13 After being assigned to S.M.T.'s case, Valk never went to the House of Correction to have a face-to-face discussion with S.M.T.; instead, contact was generally by phone or text. In this manner, Valk worked to set up visitation with the children after S.M.T. was granted Huber privileges.
¶14 S.M.T. argues that Valk did not engage with her sufficiently to assist her in meeting the requirements of the CHIPS orders; that is, he failed to make reasonable efforts to provide services to S.M.T. Due to this failure, S.M.T. asserts that the trial court erred in ruling that the State had proven that there was not a substantial likelihood that S.M.T. would meet the requirements of the CHIPS orders within the nine-month period after the court trial.
¶15 The trial court acknowledged that this was not one of Valk's "finest efforts in terms of a case," and that having a face-to-face discussion of the case with S.M.T. would have been "preferable." However, the court also recognized that when Valk took over S.M.T.'s case, the CHIPS orders had been "pending for a significant period of time" and the TPR petition had been filed. Furthermore, S.M.T. was incarcerated at that time, and the court noted that her own conduct had "put her in that position."
¶16 Additionally, the trial court discussed the efforts of S.M.T.'s initial case worker, Courtney Tompkins. Tompkins worked very closely with S.M.T. beginning in August 2015, made referrals to various services available for S.M.T., and established a "good relationship" with S.M.T. Based primarily on these efforts by Tompkins, the court found that DMCPS made "more than reasonable efforts" to provide services to S.M.T. throughout the time that the CHIPS orders were in effect.
¶17 We conclude that the record supports these factual findings, and that the requirements of WIS. STAT. § 48.415(2) were properly applied to these facts. Therefore, we agree that the State proved the first ground.
¶18 We then turn to S.M.T.'s next argument that there is insufficient evidence to support the ruling that the State proved the second ground-failure to assume parental responsibility, in accordance with WIS. STAT. § 48.415(6). This ground is proven by establishing that S.M.T. did not have a "substantial parental relationship" with her children. See § 48.415(6)(a). A substantial parental relationship is demonstrated when a parent accepts and exercises "significant responsibility for the daily supervision, education, protection and care" of his or her children. Sec. 48.415(6)(b). The court "must look to the totality-of-the-circumstances" and "should consider a parent's actions throughout the entirety of the child's life when determining whether he [or she] has assumed parental responsibility." Tammy W-G , 333 Wis. 2d 273, ¶¶22-23. The court may also consider whether the parent "exposed [his or] her child to a hazardous living environment." Id. , ¶22.
¶19 In making its determination here, the trial court first calculated the amount of time each child was in out-of-home care compared to their time in S.M.T.'s custody: S.A.D.T. had spent approximately sixteen or seventeen months in S.M.T.'s care and forty months in out-of-home care; the older S.L. was in S.M.T.'s custody for about eighteen months compared with twenty-three months in out-of-home care; and the younger S.L. was in S.M.T.'s care for only six months, and in out-of-home care for twenty-three months.
¶20 The court concluded that there was "no question" that S.M.T. had a substantial relationship with S.A.D.T. during the time that S.A.D.T. was in her care. Indeed, the court recognized that S.A.D.T. had been returned to S.M.T.'s care after she was initially removed in 2013. However, in looking at the "totality" of the children's lives, the court noted that all three children had spent more time in out-of-home care than in the care of S.M.T.
¶21 The trial court further recognized that for a portion of the time that the children were in out-of-home care, S.M.T. was incarcerated. In reviewing the substantial relationship of an incarcerated parent, the court stated that it must consider the reasons for the incarceration, the nature of the underlying criminal behavior, whether the parent considered that incarceration would hinder his or her ability to assume parental responsibilities, and the efforts made by the parent to continue parental responsibilities during incarceration.
¶22 The trial court pointed out that the reason for her first period of incarceration, when all three children were removed from her care in April 2016, was because S.M.T. "chose to drive intoxicated" with the children in the car, putting the children in danger. She then "got herself incarcerated again" when she violated the terms of her probation with the restraining order violation, which limited her ability to assume parental responsibilities. The court acknowledged that S.M.T. "showed initiative" by obtaining Huber privileges during that time of incarceration, but noted that she then violated the terms of her Huber release and lost those privileges. Furthermore, the court pointed out that during the times when S.M.T. was not incarcerated, she failed to go to the children's doctor and dental appointments even though the foster parent notified her of those appointments, and that she was never able to progress beyond eight hours of supervised visits a week.
¶23 In sum, based on the "totality of these circumstances," the trial court found that S.M.T. had failed during the twenty-three months that all three children were in out-of-home care "to take advantage of opportunities, to take advantage of resources, and to do what she needed to do to be there for her children." Therefore, the court held that the State had proven that S.M.T. failed to assume parental responsibility.
¶24 We conclude that the record supports these factual findings as well, and that the trial court properly applied the standards set forth in WIS. STAT. § 48.415(6) to these facts. Therefore, we agree that the State also proved the second ground of termination in demonstrating S.M.T.'s failure to assume parental responsibilities.
¶25 Accordingly, we affirm.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

M.D.L.'s parental rights were also terminated, and he has appealed that decision; his claims are addressed in case numbers 2018AP2281, 2018AP2282, and 2018AP2283.

The language regarding the substantial likelihood of a parent meeting the CHIPS requirements in the nine-month time period after the fact-finding hearing was recently omitted from Wis. Stat. § 48.415(2)(a)3. by the Wisconsin Legislature. However, because that now-omitted language was included in the CHIPS dispositional orders for this case, that element was included in the trial court's consideration and analysis.